IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANET R.,[1]

     Plaintiff,

v.                                      1:23-cv-00550-JMR

MARTIN O'MALLEY,[2] Commissioner
of the Social Security Administration,

     Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Janet R.'s Motion to Reverse and

Remand for Rehearing, with Supporting Memorandum (Doc. 18), which was fully briefed on

February 26, 2024.  Docs. 24–26.  The parties consented to my entering final judgment in this

case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b).  Docs. 4, 8, 10.  Having

meticulously reviewed the entire record and being fully advised in the premises, I find that the

ALJ erred by failing to adequately consider Plaintiff's constipation and related symptoms in

formulating her residual functional capacity ("RFC").  I therefore GRANT Plaintiff's motion and

remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses
only the first name and last initial of the plaintiff.  In so doing, the Court balances the plaintiff's
privacy interest in her personal medical information, *United States v. Dillard*, 795 F.3d 1191,
1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P.
5.2(c)(2)(B).

[2] Martin O'Malley became the Commissioner of the Social Security Administration on
December 20, 2023, and is automatically substituted as the defendant in this action.  FED. R. CIV.
P. 25(d).

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks, brackets, and quotation omitted).  The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (quotation omitted).  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* (quotation omitted).  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*,

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

III.    **Background and Procedural History**

Plaintiff was born in 1978, dropped out of high school after the eleventh grade, and worked for a short time as a home healthcare attendant.  AR 166, 1120, 1136.[5]  Plaintiff filed an application for Supplemental Security Income ("SSI") on August 24, 2018.  AR 166–71.  Plaintiff alleged disability since January 1, 2015,[6] due to type 2 diabetes, neuropathic pain, arthritis in the left knee, depression, and anxiety.  AR 166, 188.  The Social Security Administration ("SSA") denied her claim initially on November 29, 2018.  AR 97–100.  The SSA denied her claim on reconsideration on August 20, 2019.  AR 106–10.  Plaintiff requested a hearing before an ALJ.  AR 111–13.  On September 14, 2020, ALJ Matthew Allen held a hearing.  AR 35–59.  ALJ Allen issued his unfavorable decision on October 14, 2020.  AR 12–29.  Plaintiff requested review by the Appeals Council.  AR 162–65.  On January 21, 2021, the Appeals Council denied the request for review.  AR 1–6.  Plaintiff timely filed her first appeal to this Court on March 22, 2021.  *R. v. Social Security Administration*, 1:21-cv-00252-GBW (D.N.M. Mar. 22, 2021), Doc. 1.  On March 24, 2022, the SSA filed an Unopposed Motion for Remand to Agency pursuant to sentence four of 42 U.S.C. § 405(g), Doc. 29, which the Court granted, Doc. 30.

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ to further evaluate the opinion of consultative psychiatric examiner

---

[5] Documents 11-1 through 11-17 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] Plaintiff amended her alleged onset date to August 20, 2018 at the first ALJ hearing, the date Plaintiff's attorney claimed she filed her application.  AR 40.  In the decision, the ALJ stated that August 20, 2018 was Plaintiff's protective filing date.  AR 15.  The Court sees nothing in the record that would establish a protective filing date earlier than Plaintiff's application date of August 24, 2018.  The date discrepancy is not material to the Court's analysis.

Dr. Ava Boswell, and to further evaluate conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles.  AR 1190–92.  On November 16, 2021, Plaintiff filed a second application for SSI.  AR 1306–17.  On remand, the Appeals Council consolidated Plaintiff's second application for SSI with her first.  AR 1192.  In her second application, Plaintiff alleged disability since November 15, 2020 based on type 2 diabetes with neuropathy, vertigo, arthritis in her left knee, chronic constipation, headaches, diabetic retinopathy, insomnia, depression, anxiety, and fibromyalgia.  AR 1306–23, 1342.  On December 6, 2022, ALJ Michelle Lindsay held a hearing on the consolidated applications.  AR 1114–44.  ALJ Lindsay issued her unfavorable decision on March 3, 2023.  AR 1086–1105.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 20, 2018, her amended alleged onset date.  AR 1091, 1118.  At step two, the ALJ found that Plaintiff had the following severe impairments:  degenerative joint disease of the left knee, fibromyalgia, type 2 diabetes, obesity, major depressive disorder, anxiety disorder, posttraumatic stress disorder, panic disorder, hearing loss, migraine headache, and benign paroxysmal positional vertigo.  AR 1092.  The ALJ found Plaintiff's irritable bowel syndrome with constipation, hyperlipidemia, and hypertension to be nonsevere impairments.  *Id*.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 1092–95.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  AR 1095–1103.  The ALJ found Plaintiff had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, crouch, kneel, and crawl.  She must avoid more than occasional exposure to extreme cold.  She must avoid more than occasional exposure to extreme humidity or wet working environments. She cannot work in more than moderate noise.  She must completely avoid unprotected heights.  The

> claimant is able to understand, remember, and carry out simple instructions and make simple work-related judgments and decisions.  She is able to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task throughout an eight-hour workday and 40[-]hour workweek.  She can have occasional interactions with the general public, and with coworkers and supervisors.  She requires work involving no more than occasional change in the routine work setting.  She further requires work that does not involve the use of public transportation or travel to unfamiliar places as a requirement of the job.

AR 1095.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a home attendant.  AR 1103.  The ALJ found Plaintiff not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as housekeeping cleaner, router, and merchandise marker.  AR 1104.

Plaintiff timely filed her second appeal to this Court on June 29, 2023.[7]  Doc. 1.

## IV.    Plaintiff's Claims

Plaintiff raises seven arguments for reversing and remanding this case: (1) the ALJ failed to properly assess her diabetic peripheral neuropathy; (2) the ALJ failed to properly assess her chronic constipation; (3) the ALJ failed to properly assess the opinion of consultative psychiatric examiner Dr. Ava Boswell; (4) the ALJ failed to properly assess the opinions of non-examining state agency psychologists Drs. Mark McGaughey and Laura Lochner; (5) the ALJ failed to properly assess the opinion of consultative examiner Shuo Wang, a psychiatric mental health nurse practitioner; (6) the ALJ failed to properly assess Plaintiff's subjective symptoms and

---

[7] Because this Court previously remanded Plaintiff's case, Plaintiff was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1483(a).  If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued.  20 C.F.R. § 416.1483(b)–(d); AR 1087.  The claimant then has 60 days to file an appeal to this Court.  20 C.F.R. § 416.1481.

limitations; and (7) the ALJ's step five findings were tainted by errors in formulating Plaintiff's RFC. Doc. 18 at 6–26. The Court finds that the ALJ erred by failing to adequately consider Plaintiff's chronic constipation and related symptoms in formulating her RFC. The Court does not address the other arguments, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.   Analysis

Plaintiff argues that the ALJ erred in concluding that her chronic constipation was a nonsevere impairment at step two. Doc. 18 at 9. Plaintiff also argues that that ALJ failed to adequately consider her symptoms related to chronic constipation in formulating her RFC. *Id*. The Commissioner asserts that the ALJ adequately considered Plaintiff's chronic constipation both at step two and in formulating her RFC. Doc. 24 at 12–13. The Court finds that any step two error is harmless. However, the Court finds that the ALJ failed to adequately consider Plaintiff's chronic constipation and related symptoms in formulating her RFC. The Court will remand on this basis.

### A.   The ALJ did not commit reversible error at step two.

Plaintiff argues that the ALJ erred at step two in concluding that her chronic constipation was not a severe impairment. Doc. 18 at 9. However, the Tenth Circuit has held that the ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found Plaintiff had several severe impairments at step two, and continued through the sequential evaluation process. Therefore, the ALJ's failure to find Plaintiff's chronic constipation to be a severe impairment at step two is not reversible error under Tenth Circuit precedent.

**B.  The ALJ failed to adequately consider Plaintiff's chronic constipation and related symptoms in formulating her RFC.**

Plaintiff argues that  the ALJ failed to adequately consider her symptoms related to chronic constipation in formulating her RFC.  Doc. 18 at 9.  The Commissioner asserts that "substantial evidence supports the ALJ's conclusion that [Plaintiff's] constipation did not require any significant RFC limitations."  Doc. 24 at 12.  For the reasons explained below, the Court finds that the ALJ, in formulating Plaintiff's RFC, failed "to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen*, 436 F.3d at 1165.

When evaluating a claimant's symptoms, the regulations require the ALJ to use the two-step framework set forth in 20 C.F.R. § 416.929.  First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.  20 C.F.R. § 416.929(b).  Second, if the first step is met, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.  20 C.F.R. § 416.929(c).  In assessing the intensity and persistency of a claimant's alleged symptoms, the ALJ must consider all the evidence in the record.  SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).[8]  This includes the objective medical evidence, statements from

---

[8] Social Security Rulings are "binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted."  20 C.F.R. § 402.35(b)(2).

the claimant,[9] medical source records (including a longitudinal record of any treatment and its success or failure), and information from non-medical sources.  *Id.* at *6–7.

The ALJ's decision "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  In addition, the ALJ must "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions."  SSR 16-3p, 2017 WL 5180304, at *8.  Finally, the ALJ must discuss the following factors when analyzing a claimant's symptoms:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms . . . ; and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–8 (citing 20 C.F.R. § 416.929(c)(3)).  The ALJ "will discuss the factors pertinent to the evidence of record."  SSR 16-3p, 2017 WL 5180304, at *8.

In sum, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*  "In all cases in which symptoms, such as pain, are

---

[9] Statements about symptoms made by a claimant include statements made directly to medical sources, to other sources, and to the SSA.  SSR 16-3p, 2017 WL 5180304, at *6.

alleged, the RFC assessment must[] [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms." SSR 96-8p, 1996 WL 374184, at *7.

This case contains voluminous medical source records, objective medical evidence, and statements Plaintiff made to her medical sources about her chronic constipation and related symptoms:

1. On July 13, 2018, Plaintiff complained to a medical provider that she had "[c]onstant abdominal pain" caused by chronic constipation. AR 286–87.
2. On August 1, 2018, Plaintiff complained of abdominal pain to a primary care provider. AR 281–83.
3. On December 31, 2018, Plaintiff was seen in the emergency room for intermittent upper abdominal pain that radiated to the left flank, nausea, and constipation. AR 599–600. Physical exam showed diffuse abdominal tenderness. AR 604. Imaging showed no acute findings. AR 605. Plaintiff was given Pepcid, Zofran, morphine, and Haldol. *Id.* The treating provider posited that the abdominal pain was most likely caused by gastritis or gastroparesis, but noted several other less-likely possible causes. *Id.*
4. On January 2, 2019, Plaintiff reported one week of nausea and intermittent pain in her lower left abdomen and back, which she rated as a 10 on a 1 to 10 scale when the pain was present. AR 637–38. She reported some relief of discomfort from drinking hot tea. *Id.*
5. On January 7, 2019, Plaintiff was seen in urgent care for abdominal pain. AR 634. She reported that her pain was not improving, and asked for and obtained a referral to gastroenterology. AR 635–36. Physical exam showed "generalized tenderness" of her abdomen. AR 636. The treating provider opined that Plaintiff's generalized abdominal pain could be gastroparesis, irritable bowel syndrome ("IBS"), or inflammatory bowel disease ("IBD"). *Id.*
6. On April 10, 2019, Plaintiff saw gastroenterologist Dr. Yahuza Siba for an esophagogastroduodenoscopy ("EGD") with biopsy and a colonoscopy, based on her diagnoses of constipation and chronic abdominal pain. AR 732–33. Biopsies taken during the EGD showed "mildly active chronic gastritis" and the presence of helicobacter pylori-like organisms. AR 738. The colonoscopy noted no gross abnormalities in the rectum, but the colon could not be examined "due to solid stool that cannot be cleared." AR 734. The colonoscopy was aborted due to solid stools in the rectosigmoid. *Id.*
7. On June 18, 2019, Plaintiff was seen again in the emergency room for abdominal pain and constipation. AR 890–91. Physical exam showed abdominal tenderness and mild "right sided [abdominal thrombotic thrombocytopenia purpura]." AR 890. The provider

posited that Plaintiff "likely ha[d] gastroparesis," ordered an abdominal X-ray, and gave Plaintiff an enema and magnesium citrate.  AR 891.  The X-ray did not show any abnormalities.  AR 1919–20.

8. On September 30, 2019, a pulmonologist noted that Plaintiff was "positive for abdominal pain (chronic constipation)."  AR 859.

9. On December 12, 2019, Plaintiff saw gastroenterologist Dr. Siba to follow up on her constipation.  AR 869.  Plaintiff reported continued constipation, abdominal pain, and bloating.  *Id*.  Plaintiff reported no significant improvement, despite "aggressive management" including a high-fiber diet, MiraLAX, Metamucil, magnesium citrate, lactulose, and Amitiza.  *Id*.  Dr. Siba noted that Plaintiff had been given a trial of Movantik, but that this medication was denied by her health plan.  *Id*.  Plaintiff was contemplating surgery for the refractory constipation.[10]  *Id*.  Dr. Siba recommended senna twice a day, a Dulcolax enema daily, and magnesium oxide.  AR 872.  Dr. Siba referred Plaintiff to UNM for an anorectal motility study, ordered a defecography and sitz marker study, and planned to order another colonoscopy "[o]nce constipation has been better managed."  *Id*.  A case note on January 22, 2020 indicates that Plaintiff had been unable to schedule an anorectal motility study with UNM, as UNM told her that they did not have a referral.  AR 1980.  A note the following day shows that UNM claimed that they did not have a correct phone number for Plaintiff, but that she could now call to schedule.  *Id.*

10. On December 18, 2019, Plaintiff completed a defecography exam.  AR 2122.  The radiologist noted "[s]ignificant difficulty with defecation, with the entire amount of the administered rectal contrast remaining within the rectum at the end of the defecography exam."  *Id*.  The radiologist further noted a "small-to-moderate anterior rectocele" but was of the opinion that this did not fully explain Plaintiff's "significant difficulty with defecation."  *Id.*

11. On February 10, 2020, Plaintiff called the gastroenterologist to report that she had not had a bowel movement in two weeks.  AR 1978.  She reported "straining to the point that her back is hurting."  *Id*.

12. On February 24, 2020, Plaintiff called the gastroenterologist to report that she had not had a bowel movement in about a month.  AR 1978.  The following day, Dr. Siba advised Plaintiff to try colchicine and Dulcolax PM.  *Id*.  Dr. Siba asked her staff to schedule Plaintiff for a sitz mark study and anorectal manometry.  *Id*.  Gastroenterology staff notes from February 2020 to May 2020 note that they were unable to schedule the anorectal manometry, as testing was not being scheduled during that time period.  AR 1979.

13. On March 8, 2020, Plaintiff had a radiology appointment for a 2-view sitz mark study, which was ordered due to "refractory constipation."  AR 2106–07.  The results were

---

[10] Refractory means "resistant to treatment or cure."  *Merriam Webster Dictionary,* https://www.merriam-webster.com/dictionary/refractory [https://perma.cc/Y8ZY-TRCH].

abnormal, showing delayed colonic transit with ten retained markers on day five and "mild to moderate generalized fecal retention." *Id.*

14. On March 13, 2020, Plaintiff had a follow-up visit with gastroenterologist Dr. Siba. AR 985. Plaintiff complained of severe abdominal pain and bloating. *Id.* Dr. Siba noted that Plaintiff had tried several medications without significant improvement and summarized Plaintiff's abnormal sitz marker study and defecography exam. *Id.* Physical exam showed "diffuse moderate tenderness" of the abdomen. AR 988. Dr. Siba opined that Plaintiff had "medically refractory constipation" that had not responded to "aggressive medical management." AR 985, 988. Dr. Siba added a trial of Relistor to Plaintiff's medications, and encouraged Plaintiff to continue taking colchicine with Dulcolax. AR 988. Dr. Siba planned to wait for results of anorectal manometry before evaluating Plaintiff for colorectal surgery. *Id.*

15. On March 16, 2020, Plaintiff saw an endocrinologist. AR 990. She reported abdominal pain, nausea, and constipation. AR 996.

16. On April 14, 2020, Plaintiff reported to a diabetic educator that she was "working with GI on severe constipation [and] having difficulty eating due to discomfort." AR 998–99.

17. On May 19, 2020, Plaintiff was seen by gastroenterologist Dr. Gregg Anthony Valenzuela for her chronic constipation. AR 1012. Dr. Valenzuela noted that Plaintiff had "an EGD that showed a small bezoar" and a hiatal hernia. *Id.* Dr. Valenzuela noted that Plaintiff had most recently been on Amitiza, which was not successful, and that she was now on Linzess, which provided only brief improvement. *Id.* Plaintiff reported anorectal pain when passing bowel movements. *Id.* Dr. Valenzuela ordered lab work[11] and a gastric emptying study to assess for GI tract dysmotility.[12] *Id.* Dr. Valenzuela advised her to take 30 grams of lactulose twice a day, and to continue the Linzess. *Id.* He opined that Plaintiff might be a candidate for biofeedback, but he did not recommend scheduling that immediately due to the COVID-19 pandemic. *Id.*

18. On June 12, 2020, Plaintiff completed a gastric emptying study. AR 1028–29. This study showed normal gastric emptying, no gastroparesis, and no rapid gastric emptying. AR 1029.

19. Also, on June 12, 2020, Plaintiff saw Dr. Chitra N. Sambasivan in the Presbyterian General Surgery Department. AR 1029–37. Plaintiff reported that after using lactulose

---

[11] Plaintiff's lab work was returned on May 20, 2020 and showed that "cortisol, celiac panel, lipase, blood counts are normal." AR 1022.

[12] Dr. Valenzuela noted on the order for a gastric emptying study that Plaintiff had a bezoar. AR 1022. "A bezoar refers to a collection of partially digested material that collects in the stomach. . . . Sometimes the material is not digested at all and tightly packages itself in the digestive tract. This causes a blockage in the stomach or intestines. Many bezoars are asymptomatic, but some cause symptoms and require medical treatment." *What is a Bezoar*, https://www.webmd.com/digestive-disorders/what-is-a-bezoar [https://perma.cc/8HG4-H2VT].

every day, she was having bowel movements about once every two weeks; passing small, hard stool; and that it was painful to pass gas. AR 1030. She reported straining and sitting on the toilet for long periods of time; "back pain with feeling of having to use the bathroom"; no pain with bowel movements; limiting eating at times due to distension and pain; reasonable appetite and no significant change in weight; and symptoms for the past two years that were worsening. *Id.* Dr. Sambasivan noted that Plaintiff's "current bowel regimen" consisted of lactulose, MiraLAX, Linzess, and Metamucil. *Id.* Dr. Sambasivan diagnosed Plaintiff with "constipation, not otherwise specified" and "pelvic floor dysfunction."[13] AR 1036. Dr. Sambasivan planned to refer Plaintiff to physical therapy for pelvic floor evaluation and treatment, and ordered an upper GI with small bowel follow through to "evaluate small bowel motility." AR 1037.

20. On June 25, 2020, Plaintiff had an upper GI with small bowel follow through. AR 1039–40. This exam showed no abnormality at the esophagus, stomach, or small bowel, and no delayed small bowel transit. AR 1040.

21. On August 14, 2020, Plaintiff was seen in gastroenterology by Certified Nurse Practitioner ("CNP") Barbara Gross for abdominal pain and constipation. AR 1913, 1916. Physical exam showed abdominal distension, generalized abdominal tenderness, and tenderness in the epigastric area. AR 1917. CNP Gross diagnosed Plaintiff with constipation, abdominal pain, and dyspepsia. AR 1920. She ordered an EGD and a colonoscopy with general sedation, a two-day prep due to severe constipation, and a biopsy. *Id.* CNP Gross also planned to refer Plaintiff to UNM GI for anorectal manometry and biofeedback.[14] *Id.* CNP Gross stated that, once Plaintiff completed her colonoscopy, and information had been gathered from UNM GI, she would consider referring Plaintiff for colorectal surgery. *Id.* CNP Gross also made several changes to Plaintiff's medications: "Begin famotidine 40 mg twice daily for epigastric tenderness and discomfort, possible gastritis; Continue Linzess at 290 mcg/day; Increase Metamucil to 2 spoons twice daily; Increase MiraLAX to 1 capful twice a day; Increase Colace to 100 mg twice daily; Continue lactulose at current dose; Begin magnesium 400 mg tablet daily; Continue enemas as needed." AR 1920–21.

---

[13] One of the tests done to diagnose pelvic floor dysfunction is anorectal manometry. "This test measures how well your anal sphincters are working. It measures the pressure in your muscle contractions that help you poop. Providers often perform an electromyography (EMG) at the same time to test the coordination of your pelvic floor muscles." *Pelvic Floor Dysfunction*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/14459-pelvic-floor-dysfunction [https://perma.cc/N736-PTQS].

[14] A case note from CNP Gross on October 12, 2020 states that Plaintiff should be scheduled for anorectal manometry at their facility (Presbyterian) instead of at UNM. AR 1922. A staff note in response says that anorectal manometry cannot be scheduled at Presbyterian until after January 2021. *Id.* CNP Gross responded that Plaintiff could wait until then. *Id.*

22. On August 17, 2020, Plaintiff was seen in the emergency department for chest pain and nausea. AR 1906. She reported chronic abdominal pain and chronic constipation with nausea. AR 1909.

23. On September 23, 2020, Plaintiff had an EGD and a colonoscopy. AR 1888. The EGD showed an "irregular Z line" and "gastric antral and body erythema" and biopsies were taken to assess for Barrett's esophagus, helicobacter pylori, malabsorptive disorders, and celiac disease. AR 1890–91. Biopsy results showed "active gastritis," presence of helicobacter pylori,[15] and "gastroesophageal junction-type mucosa with acute and chronic inflammation." AR 2078. The colonoscopy was not completed due to "solid stool that cannot be cleared," but biopsy was taken to assess for colitis. AR 1891. Biopsy of the colon was benign other than "mild reactive changes." AR 2078.

24. On December 9, 2020, Plaintiff called gastroenterology to report no bowel movement for 30 days, bloating, hard stomach, nausea, dizziness, and body pain. AR 1873. She stated that she had completed two enemas with no results. *Id.* The GI nurse advised her to go to the emergency room if the bloating and pain became unbearable. *Id.*

25. On December 14, 2020, Plaintiff was seen in the emergency department for constipation, bilateral lower quadrant abdominal pain, and nausea. AR 1866. Plaintiff reported that she had not had a bowel movement in over a month; that it was difficult to pass gas; and that over-the-counter laxatives, enemas, Tylenol, and ibuprofen provided no relief. *Id.* An exam showed upper abdominal tenderness. AR 1870. An abdominal X-ray was taken, which showed "the colon filled with feces and gas" but "[n]o free air, obstruction, or mass." AR 1871. A CT showed "moderate stool in the colon" but no acute cause of Plaintiff's symptoms. *Id.* The provider recommended laxatives and enemas, which Plaintiff opted to do at home. AR 1872.

26. On December 21, 2020, CNP Gross's office called to check on Plaintiff, who reported no bowel movements and no relief from the emergency room visit. AR 1874. CNP Gross recommended a "clean out" prep of drinking a 9-ounce bottle of magnesium citrate in the morning and another in the evening, followed by MiraLAX and Gatorade the following day. *Id.* In addition, CNP Gross advised Plaintiff to continue taking her Linzess, fiber, and MiraLAX. *Id.*

27. On January 14, 2021, Plaintiff had a telephonic (due to COVID-19 restrictions) gastroenterology visit with CNP Gross. AR 1856–61. Plaintiff reported "generalized abdominal pain, tightness, [and] bloating." AR 1857. CNP Gross diagnosed Plaintiff with "[o]utlet dysfunction constipation" and chronic constipation. AR 1860. CNP Gross planned to refer Plaintiff to UNM Gastroenterology for anorectal manometry and biofeedback and to Peak Motion Physical Therapy for pelvic floor evaluation and treatment to improve defecation. *Id.* A series of case notes over the next three months show that Plaintiff had difficulty obtaining the care recommended by CNP Gross. AR

---

[15] On October 15, 2020, Plaintiff was prescribed antibiotics to treat the helicobacter pylori. AR 1885.

1855–56 (Plaintiff called on 1/21/21 to advise that Peak Motion Physical Therapy did not do "outlet dysfunction constipation therapy"); AR 1856 (Plaintiff called on 2/5/21 to state she was unable to schedule with UNM because UNM stated they did not receive a referral); AR 1841 (Plaintiff called on 3/15/21 to advise that UNM PT told her that person who provided PT therapy there had left, and that she left message for UNM GI but had not been called back); *Id.* (Plaintiff called on 3/30/21 to advise that UNM stated they had not received a referral "and her pain and inability to use the restroom is starting to get worse"); AR 1842 (nursing note on 3/31/21 indicating that UNM no longer does anorectal manometry with biofeedback for constipation and asking CNP Gross if new referral should be entered); *Id.* (nursing note on 4/19/21 indicating Plaintiff was called to tell her that UNM no longer does pelvic floor dysfunction therapy and that she should call Presbyterian Healthplex).

28. On June 1, 2021, Plaintiff's primary care doctor started her on "Baclofen 20 mg at bedtime as indicated for Constipation due to Intestinal Spasms, along with stool softeners, good hydration and a high fiber diet."  AR 1834.

29. On August 27, 2021 Plaintiff had a telephonic visit with her primary care doctor, Dr. Ramos Rosado.  AR 1828.  She complained that her IBS/constipation was not responding to any medication prescribed, had been worsening over the last three months, and that she now had "generalized abdominal crampy pain."  *Id.*  Dr. Rosado noted that Plaintiff had not made the appointment with GI even though a referral had been done several months ago.  *Id.*  Dr. Rosado completed a new referral, ordered an abdominal ultrasound, and advised Plaintiff to continue Linzess for IBS with constipation.  *Id.*

30. On September 21, 2021, Plaintiff had an abdominal ultrasound to assess her generalized abdominal pain and constipation.  AR 2060–61.  The examination was difficult due to the presence of bowel gas, and showed hepatic steatosis, but no acute findings.  AR 2062–63.

31. On October 1, 2021, Plaintiff reported to a behavioral health provider that she had constipation, and last bowel movement two months ago.  AR 1803.

32. On November 3, 2021, Plaintiff reported to a primary healthcare provider constipation, eating very little, diffuse abdominal pain, and pain when passing gas.  AR 2154.  She reported that she had tried multiple medications, and "failed" two colonoscopies.  *Id.*  The provider ordered an X-ray to rule out bowel obstruction, and educated her on fiber intake.  AR 2155.

33. On November 17, 2021, Plaintiff had an abdominal X-ray done to assess her constipation.  AR 2159.  The doctor reading the X-ray noted a "[l]arge amount of stool throughout the colon" and pelvic phleboliths,[16] but no small or large bowel dilatation.  *Id.*

---

[16] Pelvic phleboliths are "tiny calcifications (masses of calcium) located within a vein. They are sometimes called 'vein stones.'  The phlebolith starts as a blood clot and hardens over time with calcium. When these calcified masses are found in your pelvis, they are called pelvic phleboliths."  https://www.healthline.com/health/pelvic-phleboliths [https://perma.cc/PB5E-KQZJ].

34. On December 6, 2021, Plaintiff had a telehealth visit (due to COVID restrictions) with her primary care provider about her constipation. AR 2164–65. Plaintiff stated that she had not had a bowel movement for two months, and had two days of abdominal pain and cramping. AR 2164. Plaintiff reported using two suppositories and a Fleet enema, but was still unable to pass stool. *Id.* Plaintiff's provider advised her to go the emergency room to rule out bowel obstruction. *Id.*

35. On January 26, 2022, Plaintiff had an annual check-up with her primary care doctor. AR 2166–67. She reported feeling "full and uncomfortable" and stated that she was not able to eat much due to her constipation. AR 2166. She further reported that she had tried a mineral oil enema, taking lactulose orally daily, and using an over-the-counter enema, but that she still had constipation. *Id.* She admitted that she had failed to follow up with GI after her gastric emptying test, but requested a new referral to GI. *Id.* Physical exam showed "hypoactive bowel sounds." *Id.* Plaintiff was diagnosed with constipation that was chronic and ongoing, and provided a STAT referral to gastroenterology because she had not had a bowel movement in five days. AR 2167. She was also prescribed a lactulose enema. *Id.*

36. On March 30, 2022, Plaintiff was seen by gastroenterology CNP Gross for chronic constipation. AR 2229. CNP Gross noted that Plaintiff had a "longstanding history of significant constipation." *Id.* Plaintiff reported generalized abdominal pain, chronic constipation, bowel movements only 2–3 times per month, which were small and difficult to pass, Bristol stool scale #1, "severe" bloating and gas, and "generalized abdomen pain." AR 2230. Physical exam showed a slightly distended abdomen and hypoactive bowel sounds in all four quadrants. AR 2234. In reference to CNP Gross's January 14, 2021 referral to UNM GI for anorectal manometry and biofeedback, Plaintiff reported that she never received a call from UNM GI to schedule the appointment and was never seen. AR 2230. CNP Goss sent a second referral and gave Plaintiff the number to call to schedule directly with UNM GI if she did not receive a call to schedule. *Id.* CNP Gross noted that Plaintiff had not been able to complete a colonoscopy "due to inability to clear colon of stool" but planned to order one once Plaintiff's constipation improved. AR 2235.

37. On May 11, 2022, Plaintiff advised her primary provider that she had "very small painful" bowel movements, and had not had one since the previous week. AR 2210. Her provider encouraged hydration, warm liquids, increase activity, and continued follow up with GI. AR 2211.

38. On September 13, 2022, Plaintiff saw Elena Silva-Velarde for anorectal manometry. AR 2257. Plaintiff completed two Fleet enemas prior to the exam, as instructed, but did not have any stool output. *Id.* A digital rectal exam showed "a large amount of soft stool in the rectum," and the provider was "unable to proceed [due to] increased risk of perforation." *Id.*

39. On October 3, 2022, Plaintiff advised her primary care doctor that she saw her gastroenterologist, but was unable to get the medication they recommended, as her insurance did not cover it. AR 2252. She stated that she was "still struggling with constipation" and was waiting for further instructions from gastroenterology. *Id.*

Plaintiff also reported symptoms from constipation to the SSA during the administrative review process. In an April 22, 2019 function report, Plaintiff indicated that she had difficulties using the toilet due to "chronic constipation." AR 217.[17] On September 14, 2020, at her first hearing, Plaintiff's attorney asked her about the "severe or significant constipation" noted in her records and how this impacted her functioning. AR 49. Plaintiff testified that her constipation had a significant impact because it was "very painful" and prevented her from doing much of anything. *Id.* She further testified that the constipation caused pain in her stomach, pelvic region, and back, and that this pain prevented her from being able to bend down. *Id.* In a March 9, 2022 function report, Plaintiff again indicated that she had difficulties with toileting due to "severe chronic constipation."[18] AR 1360.

Despite Plaintiff's long history of medical treatment for chronic constipation, and her testimony about symptoms and limitations connected to this impairment, the ALJ failed to adequately consider the impairment or her symptoms in formulating her RFC. Indeed, the ALJ's RFC discussion includes only a single sentence about Plaintiff's chronic constipation: "She has

---

[17] Because Plaintiff's two SSI applications were consolidated, the ALJ was required to consider all evidence in Plaintiff's record on remand. *See* 20 C.F.R. § 416.1452(b) ("There will be a single record at a consolidated hearing" and "evidence introduced in one case becomes evidence in the other(s)."); *see also* SSR 16-3p, 2017 WL 5180304, at *9 ("We will consider statements an individual made to us at each prior step of the administrative review process, as well as statements the individual made in any subsequent or prior disability claims under titles II and XVI.").

[18] Plaintiff's difficulties with using the toilet are also seen in her report to a medical provider about straining and sitting on the toilet for long periods of time (AR 1030) and by the statement of her son, who acts as her paid caregiver, that he sometimes has to help her "getting off toilet" (AR 1352).

been recently treated for fibromyalgia and chronic constipation, but a gastric emptying study was normal, with no evidence of diabetic gastroparesis (30F/9)." AR 1098. This cursory sentence falls far short of what is required. The ALJ did not discuss any of the symptoms Plaintiff reported in connection with her chronic constipation—including pain, inability to bend, and taking a long time to use the toilet due to straining—despite the requirement to do so. *See* SSR 96-8p, 1996 WL 374184, at *7 (ALJ's decision "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). The ALJ did not conduct a "thorough discussion and analysis" of the evidence related to Plaintiff's constipation. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not discuss any of the medical source records, objective medical evidence, or statements Plaintiff made to her medical sources about her chronic constipation and related symptoms. *See* discussion at pp. 10–17, *supra*. Finally, the ALJ did not discuss any of the factors for evaluating symptoms, despite the requirement to do so. SSR 16-3p, 2017 WL 5180304, at *8 (the ALJ "will discuss the factors pertinent to the evidence of record"). For example, the ALJ did not discuss "[t]he type, dosage, effectiveness, and side effects of [Plaintiff's] medication[s]," or any of the treatment Plaintiff received, despite ample record evidence related to each of these factors. *Id*.; *see also* discussion at pp.10–17, *supra*.

Instead of a thorough discussion and analysis of the evidence, the ALJ cited only a single test from June 2020 showing normal gastric emptying with no evidence of gastroparesis. AR 1098. It is unclear from this single sentence what conclusions the ALJ drew about Plaintiff's chronic constipation and related symptoms. The ALJ offers no explanation. The Court, having reviewed the record, fails to see how this single test sheds any light on the severity of Plaintiff's constipation or her related symptoms.

At best, the June 2020 test showing normal gastric emptying ruled out a possible cause of Plaintiff's chronic constipation.  This is evident from reviewing the treatment note from Dr. Valenzuela from May 19, 2020—the day he ordered the gastric emptying test.  AR 1012.  Dr. Valenzuela noted that Plaintiff had a history of chronic constipation and abdominal pain.  *Id*.  He noted that she had several abnormal tests:  an EGD that showed a small bezoar and a hiatal hernia; a "Sitz marker study [that] showed 10 markers at 5 days," a colonoscopy that had to be "terminated because of solid stool," and a defecography test that showed a small to moderate anterior rectocele and significant difficulty with defecation, with the entire amount of administered rectal contrast remaining in the rectum at the end of the exam.  *Id.*  He further noted that Plaintiff had been on several medications for chronic constipation, and that none had successfully managed her symptoms.  *Id.*  It is within this backdrop that Dr. Valenzuela ordered a gastric emptying study to see if her chronic constipation could be due to "GI tract dysmotility."[19]  *Id.*  He also ordered bloodwork to rule out some other possible causes of constipation.  *Id.*  Dr. Valenzuela added lactulose to her medication regime, and stated that she might be a candidate for biofeedback to manage her chronic constipation.  *Id.*  There is no indication in his treatment notes that Dr. Valenzuela ordered the gastric emptying test to determine if Plaintiff had chronic constipation or to determine the severity of her symptoms.

The treatment notes from a second treating provider, Dr. Sambasivan, also show that the June 2020 gastric emptying study was not being used to diagnose the presence or severity of

---

[19] Doctors use a variety of tests to look for signs of certain diseases and conditions that may be causing constipation—including blood tests, colonoscopy and/or sigmoidoscopy (with or without biopsy), colorectal transit studies (including tracking radioactive markers and food with a radioactive substance added passing through the digestive system), defecography, anorectal manometry, lower GI imaging, MRI, and CT scans.  *Diagnosis of Constipation*,  National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/digestive-diseases/constipation/diagnosis [https://perma.cc/24ZF-ED8Z].

Plaintiff's constipation or related symptoms.  Plaintiff saw Dr. Sambasivan for a surgical consult on June 12, 2020.  AR 1029–37.  Dr. Sambasivan noted that Plaintiff would be undergoing a gastric emptying study, and that her previous gastric emptying study in April 2019 had been normal.  AR 1037.  There is no indication in her treatment notes that Dr. Sambasivan was waiting on the results of the gastric emptying test to determine if Plaintiff had chronic constipation or to determine the severity of her symptoms.  Instead, Dr. Sambasivan, like Dr. Valenzuela, noted that Plaintiff already had several abnormal tests:  an abnormal sitz marker study, an abnormal defecography, as well as an inability to empty rectal contrast.  *Id.*  To further assess the causes and possible treatments for her chronic constipation, Dr. Sambasivan ordered a ordered an upper GI with small bowel follow through to "evaluate small bowel motility," diagnosed her with possible pelvic floor dysmotility, and referred her for pelvic floor physical therapy.  *Id.*  In the context of Dr. Valenzuela's and Dr. Sambasivan's treatment notes specifically, as well as the medical evidence of record generally, Plaintiff's June 2020 test showing normal gastric emptying reveals nothing about the severity of her chronic constipation symptoms.

In sum, the ALJ's single-sentence RFC discussion of Plaintiff's constipation and related symptoms is legally insufficient.  The RFC "must[] [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms."  SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must also "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.*  Here, the ALJ's RFC offered no meaningful discussion or analysis related to Plaintiff's chronic constipation and related symptoms.  This legal error requires remand.

**C. The ALJ's step two findings are both legally and factually insufficient to replace the RFC findings that the ALJ failed to make.**

The Commissioner claims that the ALJ found that Plaintiff's chronic constipation did not require any RFC limitations, and supported this finding with substantial evidence.  Doc. 24 at 12.  The Commissioner, however, points to no such finding or substantial evidence in the ALJ's RFC analysis.  Instead, the Commissioner points to the ALJ's step two discussion about the severity of Plaintiff's chronic constipation.  *Id.*  The Commissioner argues that the ALJ's step two discussion of unremarkable testing related to Plaintiff's chronic constipation provides substantial evidence for the ALJ's "conclusion that [Plaintiff's] constipation did not require any significant RFC limitations."  *Id*.  This argument is both legally unsound and factually unsupported.

The Commissioner's argument is legally unsound.  The law is clear that an ALJ may not "simply rely on [a] finding of non-severity [at step two] as a substitute for a proper RFC analysis."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citation omitted).  An ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe, when assessing a claimant's RFC.  20 C.F.R. § 416.945(a)(2).  And an ALJ must "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [a claimant's RFC]."  20 C.F.R. § 416.945(e).  An ALJ's failure to consider nonsevere impairments in formulating a claimant's RFC, and at steps four and five of the sequential evaluation process, is legal error requiring remand.  *Wells*, 727 F.3d at 1069 (ALJ's exclusion of non-severe impairments in assessing claimant's RFC based on a step-two finding of non-severity was "inadequate under the regulations and the Commissioner's procedures"); *see also McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (unpublished) ("[W]e cannot conclude that the Commissioner applied the correct legal standards" where the "ALJ made no findings on what, if any, work-related limitations resulted from [claimant's] nonsevere mood

disorder and chronic pain.  He did not include any such limitations in . . . his RFC

determination[,] . . . [n]or did he explain why he excluded them."); *Grotendorst v. Astrue*, 370 F.

App'x 879, 884 (10th Cir. 2010) (unpublished) ("[O]nce the ALJ decided . . . that [claimant's]

mental impairments were not severe, she gave those impairments no further consideration.  This

was reversible error.")

The Commissioner's argument is also factually unsupported.  Even if the Court could

rely on the ALJ's step two findings as a substitute for a proper RFC analysis—which it cannot,

*Wells*, 727 F.3d at 1065—the ALJ's step two findings offer no explanation of how the ALJ

assessed the symptoms and limitations connected to Plaintiff's chronic constipation.

At step two, the ALJ found Plaintiff's "irritable bowel syndrome with constipation" to be

nonsevere.  AR 1092.  Below this finding of nonseverity, the ALJ stated the following:

> The claimant has been diagnosed with irritable bowel syndrome with constipation
> and is on multiple medications for this condition (23F/17).  A sitz marker study on
> March 7, 2020 showed 10 markers at five days (30F/9). A gastric emptying study
> on June 12, 2020 was normal, with no evidence of diabetic gastroparesis (30F/9).
> An upper GI with small bowel follow through showed no abnormality (30F/9).  A
> CT scan of the abdomen on December 14, 2020 was normal (30F/9).  An ultrasound
> of the abdomen on September 21, 2021 revealed no acute findings (30F/9).  An
> abdominal x-ray on November 17, 2021 showed a large amount of stool throughout
> the colon (30F/9).

AR 1092.

The ALJ offers no analysis and draws no conclusions from these mixed test results, nor is

any conclusion obvious to the Court.  Instead, the ALJ's step two findings about Plaintiff's

constipation merely list both abnormal test results (sitz marker study showing ten markers at five

days; X-ray showing a large amount of stool in the colon) and normal test results (gastric

emptying study; upper GI with small bowel follow through; abdominal ultrasound).  AR 1092.

The ALJ does not explain what these mixed test results show about the presence or severity of

Plaintiff's chronic constipation.  Nor does the ALJ point to medical evidence of record showing

that Plaintiff's treating providers drew any conclusions from these test results about the presence

or severity of her chronic constipation and related symptoms.

In a reach to argue that the ALJ's RFC is supported by substantial evidence, the

Commissioner points to the ALJ's step two finding that Plaintiff "has not been fully compliant

with recommended workup and testing, including referrals for anorectal manometry and

biofeedback-outlet function or physical therapy."  Doc. 24 at 12 (citing AR 1092).  Again, even

if the Court could rely on the ALJ's step two findings as a substitute for a proper RFC analysis—

which it cannot, *Wells*, 727 F.3d at 1065—this statement by the ALJ is factually incorrect.

Contrary to the ALJ's claim that Plaintiff did not follow up on a referral for anorectal

manometry, the record shows that Plaintiff was seen for anorectal manometry on September 13,

2022.  AR 2257.  Although Plaintiff completed the recommended preparation for the anorectal

manometry appointment, the provider was unable to complete the procedure due to a "large

amount of soft stool in the rectum" creating an "increased risk of perforation."  *Id.*  While there

was delay in scheduling the anorectal manometry, the record shows that Plaintiff had great

difficulty scheduling the procedure, as several facilities were not performing the procedure in

2020 and 2021.  *See footnote* 20, *infra*. In addition, while CNP Gross did refer Plaintiff to Peak

Motion for physical therapy for a pelvic floor evaluation and treatment to improve defecation

(AR 1860), the record also indicates that Peak Motion advised Plaintiff that they did not provide

this type of physical therapy (AR 1856).  Finally, while failure to follow recommended treatment

can be part of the ALJ's symptom analysis in determining a claimant's RFC, at the RFC stage,

the ALJ must "not find an individual's symptoms inconsistent with the evidence in the record on

this basis without considering possible reasons he or she may not comply with treatment."  SSR

16-3p, 2017 WL 5180304, at *9.  There is ample record evidence documenting Plaintiff's

difficulties obtaining both anorectal manometry and pelvic floor physical therapy, none of which

the ALJ discussed.[20]

The Commissioner's attempts to salvage the ALJ's flawed decision fails.[21]  The ALJ's

step two findings are both legally and factually insufficient to replace the RFC findings that the

ALJ failed to make.  "In all cases in which symptoms, such as pain, are alleged, the RFC

assessment must[] [c]ontain a thorough discussion and analysis of the objective medical and

_____

[20] Gastroenterology staff notes from February 2020 to May 2020 note that they were unable to schedule the anorectal manometry, as testing was not being scheduled during that time period. AR 1979.  A case note from CNP Gross on October 12, 2020 states that Plaintiff should be scheduled for anorectal manometry at their facility (Presbyterian) instead of at UNM.  AR 1922. A staff note in response says that anorectal manometry cannot be scheduled at Presbyterian until after January 2021.  *Id.*  CNP Gross responded that Plaintiff could wait until then.  *Id.*  A series of gastroenterology case notes in early 2021 show that Plaintiff had difficulty scheduling both anorectal manometry and physical therapy as ordered by CNP Gross.  AR 1856 (Plaintiff called on 1/21/21 to advise that Peak Motion Physical Therapy did not do "outlet dysfunction constipation therapy"); AR 1855–56 (Plaintiff called on 2/5/21 to state she was unable to schedule with UNM because UNM stated they did not receive a referral); AR 1841 (Plaintiff called on 3/15/21 to advise that UNM PT told her that person who provided PT therapy there had left, and that she left message for UNM GI but had not been called back); AR 1841 (Plaintiff called on 3/30/21 to advise that UNM stated they had not received a referral "and her pain and inability to use the restroom is starting to get worse"); AR 1842 (nursing note on 3/31/21 indicating that UNM no longer does anorectal manometry with biofeedback for constipation and asking CNP Gross if new referral should be entered); AR 1842 (nursing note on 4/19/21 indicating Plaintiff was called to tell her that UNM no longer does pelvic floor dysfunction therapy and that she should call Presbyterian Healthplex).

[21] The Commissioner also cites evidence on which the ALJ did not rely.  *See* Doc. 24 at 13 (citing Plaintiff's BMI and a March 2022 opinion by state agency medical consultant).  The ALJ did not cite either of these in analyzing Plaintiff's chronic constipation.  The Commissioner's arguments are therefore post hoc rationalizations.  The Court cannot rely on explanations not provided by the ALJ.  *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). Similarly, in his summary of the evidence the Commissioner gives a selective tour of some of the medical evidence of record related to Plaintiff's chronic constipation.  Doc. 24 at 4–5. However, what matters for the Court's review is the ALJ's analysis and summary of the evidence then, not the Commissioner's analysis and summary of the evidence now.

other evidence, including the individual's complaints of pain and other symptoms."  SSR 96-8p, 1996 WL 374184, at *7.  The ALJ failed to adequately discuss or analyze the medical evidence or Plaintiff's symptoms related to her constipation in formulating her RFC.  The Court remands so that the ALJ can remedy this error.

## VI.    Conclusion

The ALJ erred by failing to adequately consider and discuss Plaintiff's symptoms and limitations stemming from her chronic constipation in formulating her RFC.  The Court remands so that the ALJ can remedy this error.  The Court does not address Plaintiff's other claims of error as they "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 18) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent